```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CHAUDRY S. BADAR, ALIA DAVARIAR,              :
MUHAMMAD SHAFQAT, BALQEES BADAR               :
and BILAL BADAR,                              :
                                              :
                      Plaintiffs,             :
                                              :      MEMORANDUM AND ORDER
             -against-                        :      18-cv-06390 (DLI)(RER)
                                              :
SWISSPORT USA, INC. and PAKISTAN              :
INTERNATIONAL AIRLINES,                       :
                                              :
                      Defendants.             :
----------------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

On September 30, 2020, this Court issued a Memorandum and Order denying Plaintiffs' motion to strike affirmative defenses and the parties' cross-motions for summary judgment, the latter without prejudice pending the Court's determination as to whether the Convention for the Unification of Certain Rules for International Carriage by Air, also known as the Montreal Convention, exclusively governs the rights and liabilities of the parties. *See*, Memorandum and Order, dated September 30, 2020, Dkt. Entry No. 47.

On February 10, 2021, the parties appeared before this Court for an evidentiary hearing to introduce any documentary evidence or witness testimony on the Montreal Convention issue.[1] *See*, Minute Entry dated February 10, 2021. Prior to the hearing, the parties submitted documentary exhibits, which included transcribed excerpts from witness depositions and email communications among employees of Defendants Swissport USA, Inc. ("Swissport") and Pakistan International Airlines ("PIA"). *See*, Dkt. Entry Nos. 53-58. After the hearing, the parties

---

[1] Due to the ongoing COVID-19 pandemic, the hearing was held by video and audio conferencing and the public was given telephone access to the proceeding.

submitted briefs to support their positions.  *See*, Pls.' Brief, Dkt. Entry No. 68; Defs.' Brief, Dkt. Entry No. 69.  The parties replied to each other's briefs.  *See*, Defs.' Reply, Dkt. Entry No. 70; Pls.' Reply, Dkt. Entry No. 71.  For the reasons set forth below, the Court finds that the Montreal Convention exclusively governs the claims in this case and that this Court is not the appropriate forum to adjudicate Plaintiffs' claims.  Accordingly, the action is dismissed.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history of this case, which is set forth in the Court's September 30, 2020 Memorandum and Order.  As such, the background here is limited to the pertinent facts developed during the February 10, 2021 evidentiary hearing to decide the legal question of whether the Montreal Convention exclusively governs the rights and liabilities of the parties.  *See*, Memorandum and Order at 17.  Specifically, the hearing was to determine whether PIA's failure to transport Nauman Badar's remains from New York to Lahore, Pakistan was a delayed performance or a complete nonperformance of contract.  *See*, *Id.* at 12-17. Bilal Badar and Chaudhry Badar, the decedent's brother and father, respectively, testified for Plaintiffs.  *Id*.  Paulette Cottone ("Cottone"), who has held various positions for PIA and currently is the PIA's New York Office coordinator, testified for Defendants.  *Id*.

On October 28, 2017, Bilal Badar boarded PIA Flight 712 ("Flight 712"), traveling from John F. Kennedy International Airport ("JFK") to the Lahore Airport in Pakistan, believing that the plane also was carrying the remains of his deceased younger brother, Nauman Badar.  *See*, Tr. of Civil Cause for Evidentiary Hearing ("Tr."), Ex. A to Pls.' Brief, Dkt. Entry No. 68-1, at 19:9, 22:19-23, 38:19-20.  When Flight 712 arrived in Lahore on October 29, 2017, Bilal Badar learned that Nauman Badar's remains had not been on the plane.  *Id.* at 28:13-20.  For the next eight to ten hours, Bilal Badar and his family stayed at the Lahore Airport and attempted to locate the remains

2

by contacting various agencies, including PIA's New York staff, the PIA staff at Lahore Airport, and Muslim Funeral Services ("MFS"). *Id.* at 28:17-20, 29:3-24, 31:11-15, 45:7-12, 74:19-25.

Eventually, MFS sent Bilal Badar a picture of Nauman Badar's casket, informing him that the remains had been found in a hallway at JFK and that MFS was taking the remains to cold storage for preservation. *Id*. at 31:16-19, 32:1-6, 44:2-8. Later that night, Bilal Badar, his father, and his older brother got on a flight back to New York. *Id*. at 34:2-5, 17-19. Once they arrived in New York, they decided to bury the remains at a cemetery in Maryland so as to comply with their custom of burying remains as quickly as possible and asked MFS to send the remains there. *Id.* at 21:22-23, 35:7-10. On November 1, 2017, Bilal Badar, his father, and his brother drove from New York to Maryland and held the burial. *Id.* at 35:11-16.

Cottone testified credibly that, when Flight 712 departed JFK, two caskets were left behind, one containing Nauman Bader's remains and one containing the remains of another decedent also destined for Pakistan on that flight. *See*, *Id.* at 63:22-23, 64:17-21, 23-25. Upon locating the caskets, PIA contacted MFS, who picked them up for cold storage. *Id.* at 65:4-11. According to Cottone, PIA contacted the Badar family and the family of the other decedent and offered to ship both caskets immediately to Pakistan through Emirates Airlines. *Id.* at 65:18-19. The family of the other decedent accepted PIA's offer, and PIA immediately transported the remains to Pakistan. *Id.* at 65:19-22. However, the Badar family declined the offer, deciding instead to bury Nauman Bader's remains in the United States. *Id.*

## LEGAL STANDARD

Where one of the Montreal Convention's damage provisions applies, "the Convention provides the sole cause of action under which a claimant may seek redress for his injuries." *Seagate Logistics, Inc. v. Angel Kiss, Inc.*, 699 F. Supp.2d 499, 505 (E.D.N.Y. 2010) (quoting

*Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp.2d 361, 365 (S.D.N.Y. 2006)). The relevant damages provision here is Article 19 of the Convention, which states that "[t]he carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo." Montreal Convention, Art. 19, 1999 WL 33292734, at *35.

Courts have held that a plaintiff's decision to secure substitute travel constitutes a delay in the carriage of passengers, baggage, or cargo and, thus, remains subject to Article 19. *See, e.g.*, *Paradis v. Ghana Airways Ltd.*, 348 F. Supp.2d 106, 114 (S.D.N.Y. 2004)), *aff'd*, 194 F. App'x 5 (2d Cir. 2006) (summary order) (collecting cases). By contrast, where a defendant fails to perform its obligation and fails to offer alternate transportation, a plaintiff's claims are not subject to the preemptive effect of Article 19. *See*, *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp.2d 447, 454 (E.D.N.Y. 2007) (finding that plaintiffs' claims were not preempted by Article 19 of the Warsaw Convention, because "plaintiffs have shown that World [Airways, Inc.] simply refused to fly them, without offering alternate transportation[]").

## DISCUSSION

As an initial matter, Plaintiffs argue that there was a contract between the Badar family and PIA to transport Nauman Badar's remains to Pakistan on October 28, 2017. Pls.' Brief at 1. Bilal Badar testified that the purported written contract was the plane ticket that he purchased for Flight 712. *See*, Tr. at 22:19-23, 26:6-15, 36:3-15, 41:17-42:4. Plaintiffs never submitted the ticket for the Court's consideration, neither as part of the summary judgment motions nor for the evidentiary hearing. Consequently, there are no contractual terms for the Court to assess to determine whether Defendants breached the purported contract.

Defendants contend that the controlling contract here is the Air Waybill signed by MFS on October 28, 2017. *See*, Defs.' Reply at 1-2; *See also*, Air Waybill, Ex. 1 to Aff. of Arbab

4

Hibutallah in Opp'n to Pls.' Mot. for Summ. J. and Mot. to Strike Affirmative Defenses ("Hibutallah Aff."), Dkt. Entry No. 42-1. An air waybill is a "document acknowledging the receipt of goods by a carrier or by the shipper's agent and the contract for the transportation of those goods." Black's Law Dictionary 1821, 1934 (11th ed. 2019); *See also*, *Tai Ping Ins. Co., Ltd. v. Northwest Airlines, Inc.*, 94 F.3d 29, 30 n.1 (2d Cir. 1996) ("An air waybill is a written document describing the shipping arrangement between the air carrier and the shipper. It includes, inter alia, the point of origin and destination and a description of the goods included in the shipment.") (citations omitted).

While the Air Waybill here concerned the shipment of "Hum Remain of Nauman Badar" via carrier "Pakistan International" on flight "PK 712," MFS was the designated shipper, not Plaintiffs. *See*, Air Waybill, Ex. 1 to Hibutallah Aff. Moreover, while MFS presumably signed the Air Waybill on behalf of Plaintiffs, Plaintiffs never identified the Air Waybill as the contract at issue. Thus, the Court is not convinced that the Air Waybill was the controlling contract between Plaintiffs and Defendants concerning the transportation of Nauman Badar's remains. Ultimately, the determination of which contract controlled or whether a contract even existed is immaterial because the evidentiary hearing provided sufficient evidence to conclude that PIA had offered alternate transportation for Nauman Badar's remains.

Plaintiffs categorically deny that PIA ever made an offer of alternative transportation. *See*, Tr. at 36:5-11; *See also*, Pls.' Brief at 3; Pls.' Reply at 2. Plaintiffs' claims and testimony in that regard are not credible. Cottone testified credibly that, upon discovering the two caskets left behind in the JFK terminal, PIA contacted MFS to pick up both caskets for cold storage. *Id.* at 65:3-11. Then, PIA offered to transport both bodies to Pakistan via Emirates Airlines. *Id.* at 65:18-19. Cottone testified that she was certain PIA had made the offers because the other family

5

accepted the offer and PIA immediately transported those remains to Pakistan. *Id.* at 65:20. Cottone's testimony is corroborated by an October 30, 2017 email from the PIA Country Manager for the United States to a Swissport representative and other PIA employees stating that "[t]he human remains were taken back to our cargo area and immediately transferred to the funeral home for cold storage . . . . The bodies will now be transported to Pakistan by some other carrier." Email by Naseem Ahmed Alavi dated October 30, 2017, Ex. 2 to Pls.' Evidentiary Hearing Index of Exs., Dkt. Entry No. 53-2, at 3.

Under somewhat similar circumstances, a district judge from the Southern District of New York held that the Montreal Convention applied when the plaintiff failed to afford the airline the opportunity to complete its contractual obligation. *See*, *Paradis*, 384 F. Supp.2d at 114. In *Paradis*, the defendant, Ghana Airways, cancelled the plaintiff's flight from Sierra Leone to the United States. *Id.* at 108. Rather than waiting for Ghana Airways to arrange a new flight, the plaintiff booked a flight with a different airline to return to the United States that night because he wanted to return home as soon as possible. *Id*. The plaintiff unsuccessfully attempted to get reimbursed by the defendant for the cost of the alternate flight. *Id.* at 109. Subsequently, the plaintiff brought a breach of contract action against the defendant for cancelling the flight. *Id.* The *Paradis* court found that the plaintiff "did not afford the airline an opportunity to perform its remaining obligations pursuant to the contract. The several extra hours Paradis spent in Sierra Leone did not expose Ghana Airways to liability for contractual non-performance. Moreover, there was no indication that Ghana Airways intended to repudiate its contractual obligations." *Id.* at 114. Accordingly, the court held that the Montreal Convention applied and preempted the plaintiff's state law breach of contract claim. *Id*. The Second Circuit affirmed the district court's decision. *See*, *Paradis*, 194 Fed. Appx. at 6.

6

The instant case is analogous to *Paradis*. Bilal Badar testified that the family chose to bury Nauman Badar in Maryland because they wanted to hold the burial as soon as possible, and the family "had no choice" and "no option for . . . any other alternative." Tr. at 44:16-18. When Bilal Badar returned to New York with his father and older brother on or about October 30, 2017, rather than contacting PIA and allowing them to transport the remains to Pakistan via Emirates Airlines, he contacted MFS to deliver the remains to Maryland. Bilal Badar had ample time to contact PIA and allow them to arrange a new flight because the burial did not take place until November 1, 2017. While the Court understands the Badar family's desire to bury Nauman Badar's remains as soon as possible, they nonetheless made the decision to bury the remains in Maryland rather than giving PIA an opportunity to arrange the transport of the remains to Pakistan as PIA immediately had done for the second family.

In sum, PIA's failure to transport Nauman Badar's remains did not constitute a complete nonperformance of contract because Plaintiffs did not afford PIA an opportunity to transport the remains using alternate transportation. Thus, Article 19 of the Montreal Convention applies and preempts Plaintiff's breach of contract claim. *See*, *Vumbaca v. Terminal One Group Ass'n L.P.*, 859 F. Supp.2d 343, 366 (E.D.N.Y. 2012) ("District courts have found that Article 19 applies when a passenger does not arrive on time at her promised destination, such as where a passenger's flight is cancelled and she books an alternative flight without affording the airline an opportunity to perform its obligations . . . .") (citations omitted)).

[REST OF PAGE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

For the reasons set forth above, the Montreal Convention applies to the instant action and preempts Plaintiffs' claims.  Accordingly, this action is dismissed.

SO ORDERED.

DATED:   Brooklyn, New York
         June 10, 2021

                                           _____/s/_____
                                                DORA L. IRIZARRY
                                             United States District Judge